IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| F FAMILY SOUTH, LLC, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) Case No. 1:20-CV-00612-WS-N |
| | ) |
| BALDWIN COUNTY, ALABAMA, | ) |
| | ) |
| DEFENDANT. | ) |

## **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

Baldwin County, Alabama, the Defendant in the above-styled case, hereby respectfully files its Brief in Support of its Motion to Dismiss. This action is due to be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, as follows:

## **INTRODUCTION**

Local law, specifically including, but not limited to, Act 91-719, grants the Baldwin County Commission expanded authority over planning and zoning matters in Baldwin County. Ala. Code §§ 45-2-260 *et seq*. (1975) The 1991 Act required the Commission to divide the unincorporated areas of the County into planning

districts. Ala. Code § 45-2-261.05 (1975).[1]  The citizens of each planning district then were given the option of electing to come under the Commission's planning and zoning jurisdiction following a process laid out in Ala. Code § 45-2-261.07.  In May 1992, the citizens of Planning District 24, which consists of Ono Island, Alabama, overwhelmingly elected to institute County zoning, with only three (3) voters opposing the measure.  Since that time, property development in Ono Island has been subject to the requirements of the Baldwin County Zoning Ordinance.

Plaintiff F Family South, LLC now wants to build a single-family home on Ono Island, Alabama, without abiding by the some or all portions of the Ordinance.  (It is not currently known which parts of the Ordinance are objectionable to Plaintiff).  It has therefore filed this lawsuit seeking to exempt its property from the planning and zoning jurisdiction of the Baldwin County Commission, arguing either that 1) the 1992 election was invalid in its entirety, which would nullify the Commission's planning and zoning powers as to Ono Island; or 2) even if the election was valid, its property is actually separate from Ono Island, and therefore not part of Planning District 24.  As discussed herein, both of these arguments are without merit as a matter of law.  Plaintiff has not, and cannot, properly invoke the jurisdiction of this Court to hear its election challenge; however, even if the issue

---

[1] Act 91-719 has now been codified and amended several times; however, there have not been substantive changes to the portions of the Act discussed herein.  This Brief generally cites to the relevant Alabama Code Section.

were properly before the Court, this challenge would still be due to be dismissed with prejudice. Further, because Alabama law requires that all property in the unincorporated areas of Baldwin County be included in a planning district *even if* County zoning is not instituted in the district, Plaintiff's attempt to isolate its property is a legal impossibility. Plaintiff has also alleged regulatory takings claims pursuant to Alabama inverse condemnation law and the Fifth Amendment of the United States Constitution, both of which are due to be dismissed with prejudice.

## STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. "The point is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008). In *Bell Atlantic v. Twombly*, the Supreme Court tightened the pleading standard applicable to complaints, describing the old "no set of facts" as being "best forgotten as an incomplete, negative gloss" on Rule 8. 550 U.S. 544, 563 (2007). Instead, the Twombly Court set a "plausibility" standard, pursuant to which the plaintiff must plead enough facts (not merely unsupported legal conclusions) to show that, if the facts are proven true, he will plausibly be entitled to the relief that he seeks. *Id.* at 562-63. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). This tenant also does not require a court to indulge a plaintiff's illogical or implausible implications or assumptions. *See Id.*

## ARGUMENT

**I.     PLAINTIFF IS BARRED FROM ATTEMPTING TO NULLIFY THE ZONING ELECTION HELD ON MAY 12, 1992.**

Plaintiff has asked this Court to declare Baldwin County Zoning District 24 "null and void because the zoning election held on May 12, 1992, did not comply with Alabama Act No. 91-719. (PageID.5) This request is due to be denied, and all claims based on the theory that the 1992 election is invalid are due to be dismissed for three reasons. First, Plaintiff has failed to properly invoke the jurisdiction of this Court over this claim because neither Alabama nor federal law provides a cause of action by which it may be brought, and the federal courts' scope of review over state election claims is very limited. Second, Plaintiff's theory that the election was invalid is based on an incorrect interpretation of the relevant portions of Alabama Act No. 91-719, now codified as Alabama Code § 45-2-261.07 (1975). Finally, even if Plaintiff could generally bring this type of claim before this Court, and even if its interpretation had legal merit, it would be due to be barred by the doctrine of laches and/or the rule of repose.

### A. This Court does not have jurisdiction to entertain this election challenge.

Plaintiff seeks a declaratory judgment pursuant to both Alabama Code § 6-6-220, *et seq.*, and 28 U.S.C. § 2201 that the 1992 zoning election is void. Neither of these sections endows this (or any) Court with jurisdiction over this claim. This claim is accordingly due to be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(1).

#### 1. Alabama law does not recognize this claim.

Approaching the issue first as a matter of purely Alabama law, § 6-6-20 cannot create a vehicle for an election challenge not otherwise recognized by Alabama law:

> [It is a] well-settled principle that "[e]lection contests are not of common law origin, but are creatures of statutes which prescribe the terms and conditions of their exercise." *Cosby v. Moore*, 259 Ala. 41, 46, 65 So.2d 178 (1953). "Elections belong to the political branch of the government, and, in absence of special constitutional or statutory provisions, are beyond the control of judicial power." *Longshore v. City of Homewood*, 277 Ala. 444, 446, 171 So.2d 453 (1965) (quoting 29 C.J.S. Elections § 246). Statutes providing for election contests are to be strictly construed.

*Parker v. Mount Olive Fire and Rescue Dist.*, 420 So.2d 31, 33 (Ala. 1982). *Parker* concerned an election to establish a fire and rescue district and to levy a service charge within the district. The appellants sought to have the election results set aside, alleging that people who did not reside in the district were allowed to vote, while qualified electors were denied the right to vote. *Id.* at 32. As in this case, the statute authorizing the election did not provide for a method to challenge the outcome. *Id.* at 32. The appellants argued that this silence meant that they could

challenge it via a motion filed under Rule 59 of the Alabama Rules of Civil Procedure in the probate court asking that court to set aside its order establishing the fire district pursuant to the election. *Id.* The Alabama Supreme Court rejected this argument, holding instead that the lack of any statutory provision allowing an election challenge meant that the "legislature has not granted the right to contest elections held under Act 79." *Id.* at 33.

As in *Parker*, there is no statutory provision that specifically grants the right to contest an election held pursuant to § 45-2-261.07; therefore, Alabama law does not have authorize any challenge to the validity of such election. *Id.* This outcome cannot be avoided by resorting to other devices such as general equity jurisdiction or the Declaratory Judgment Act. *See Turner v. Cooper*, 347 So.2d 1339, 1346-47 (Ala. 1977) ("To the suggestion that equity has the general power to review the conduct of an election, therefore, we must point out that equity follows the law." (internal quotations omitted)) (holding that the court did not have jurisdiction to consider election contest when the statutory prerequisites had not been met).

### 2. Federal courts do not have jurisdiction over challenges to state elections because of an alleged violation of state law.

The doctrines of federalism and comity will usually operate to deprive federal courts of jurisdiction over state election challenges, as follows:

> The very nature of the federal union contemplates separate functions for the states. If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate

> every state election dispute, and the elaborate state election contest procedures, designed to assure speedy and orderly disposition of the multitudinous questions that may arise in the electoral process, would be superseded by a section 1983 gloss. *See Pettengill v. Putnam County R-1 School District*, 472 F.2d 121 (8th Cir. 1973); *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) (dictum). Section 1983 did not create a delictual action for the torts of state officials, *see Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695-96, 61 L.Ed.2d 433 (1979), and it did not authorize federal courts to be state election monitors.

*Gamza v. Aguirre*, 619 F.2d 449, 453–54 (5th Cir. 1980).[2] Federal courts' jurisdiction is therefore limited either to cases falling under 28 U.S.C. § 1344 (denial of the right to vote because of race, color, or previous condition of servitude) or to certain rare, extraordinary cases of "patent and fundamental unfairness" sufficient to state a claim under the Fourteenth Amendment. *Curry v. Baker*, 802 F.2d 1302, 1315 (11th Cir. 1986) (quoting *Duncan v. Poythress*, 657 F.2d 691, 703 (5th Cir. Unit B 1981)); *see also Weaver v. Bonner*, 309 F.3d 1312, 1325 (11th Cir. 2002) ("We require extraordinary circumstances to exist before we will overturn state election results and impose a special election.") (finding that a state's restrictions on public communications by candidates for judicial office was unconstitutional but refusing to overturn election results and order a special election); *May v. City of Montgomery, AL*, 504 F.Supp.2d 1235, 1237 (M.D. Ala. 2007) ("Furthermore, numerous decisions

---

[2] Decisions of the Fifth Circuit handed down prior to October 1, 1981; *en banc* decisions of the former Fifth Circuit issued after that date; or decisions issued by Unit B of the Fifth Circuit are binding precedent in the Eleventh Circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

from the Eleventh Circuit and the former Fifth Circuit warn that, in the interest of comity, federal courts should not interfere with state election law except to vindicate important federal interests under the Constitution or the Voting Rights Act.")

Plaintiff cannot avoid this result by citing 28 U.S.C. § 2201. The federal Declaratory Judgment Act "operates procedurally and merely enlarges the range of remedies available in cases over which the federal court already has jurisdiction." *El Paso Bldg. and Const. Trades Council v. El Paso Chapter Associated General Contractors of America*, 376 F.2d 797, 799 (5th Cir. 1967). It cannot be used to transform a matter of pure state law into a federal question, especially in the realm of state elections. Plaintiff therefore has not, and cannot, properly invoke the subject matter jurisdiction of this Court over the question of whether the 1992 election was valid. All claims based on this contention are accordingly due to be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**B.     Plaintiff's interpretation of Act 91-719 is incorrect.**

Even if this Court could hear Plaintiff's challenge to the May 12, 1992, election, his attempt to overturn the election results would still be due to be dismissed because it is based on a facially incorrect interpretation of the statute. Section 45-2-261.07 provides in relevant part:

> The Baldwin County Commission shall not exercise its planning and zoning powers and jurisdiction in any district established hereunder until the majority of the qualified electors of the district voting in an election shall have voted their desire to come within the planning and

zoning authority of the Baldwin County Commission…If a majority of the qualified electors in a district vote in the negative in the election, then the district shall not be subject to the zoning and planning jurisdiction of the Baldwin County Commission, and the qualified electors of the district shall not be eligible to petition for another election until two years from the date of the last election. If a majority of the qualified electors in a district vote in the affirmative, then the district shall be subject to the zoning and planning jurisdiction of the Baldwin County Commission.

Ala. Code § 45-2-261.07 (1975).[3]

Plaintiff argues that this law requires an affirmative vote from the "majority of qualified electors of District 24," not merely the majority of qualified electors who voted in the election. (PageID.3) This argument violates two of the basic principles of statutory interpretation because it is both contrary to the plain language of the statute and would lead to an absurd result. *See, e.g.*, *In re Lehman*, 205 F.3d 1255, 1255-56 (11th Cir. 2000); *Lane v. State*, 66 So.3d 824, 828 (Ala. 2010). First, the plain language of the statute clearly provides that the decision shall be made by the "majority of the qualified electors of the district **voting in an election**…"

Further, the plain language of the statute contemplates only two possible outcomes of a given election: either the "majority of the qualified electors" vote no, in which case the district must wait two years to seek another election, or the

---

[3] This section has been amended since 1991 to, *inter alia*, provide for additional procedures governing the petition process; however, the only alteration to the quoted language is that the waiting period after an unsuccessful election was changed from one year to two years in 2010. § 45-2-261.07, *Code Commissioner's Notes*.

"majority of the qualified electors" vote yes, in which case the district comes under the Commission's planning and zoning authority. The problem for Plaintiff is that the only way to guarantee this kind of definite outcome under its theory would be if every single eligible elector actually voted; even one voter's absence could, depending on number of qualified voters, result in neither side being able to claim victory, e.g., a split of 500-499 in a 1000-member district. Given the language of the statute, such a result would create a kind of zoning purgatory. Such an absurd result is plainly not allowed by law.

> C. **In the alternative, this claim is due to be dismissed for failure to state a claim and because it is barred by the doctrine of laches and/or the rule of repose.**

For the election to be declared invalid under Plaintiff's interpretation of the statute, there would have to have been at least 228 qualified electors in the district in May 1992, and at least 103 of those electors would have had to abstained from voting. The Complaint suggests that the Court assume that the number of qualified voters for District 24 "was much higher than 114" based on the fact that sixty-six electors signed the petition, which only required at least ten percent. (PageID.3) But how much higher? Even for the purposes for the motion to dismiss, this Court is only required to draw <u>reasonable</u> inferences in the plaintiff's favor. *See*, *e.g.*, *Ashcroft*, *supra*. The Complaint recites that the Petition states that the sixty-six signatories represented "at least" 10% of the qualified electors. The true number of

10

electors could be any number between 125 (the total number of votes cast in the election) and 6,600 (which seems extremely unlikely); inferring that the number was at least 228 is no more reasonable than inferring that it was 227 under the circumstances. Such allegations do not meet the pleading standard of Fed. R. Civ. Pro. 8, and do not state a claim as required by Fed. R. Civ. Pro. 12(b)(6).

Further, even if Plaintiff's suggested inference about the number of qualified electors were considered "reasonable" at this stage of pleading, it would not ultimately suffice to carry its burden of proof – and, as stated in the Complaint, it does not appear that there is any way that Plaintiff could ever do so because of the amount of time that has elapsed since the election. The claim is accordingly due to be barred by the doctrine of laches and/or the rule of repose.

The doctrine of laches will bar a claim when, because of the delay in bringing suit, "any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice." *Salter v. Hamiter*, 887 So.2d 230, 241 (Ala. 2004). "In Alabama, there is, in addition to the doctrine of laches, a rule of repose or prescription by which an action not instituted for more than 20 years is absolutely barred." *Ex parte Grubbs*, 542 So.2d 927, 930 (Ala. 1989). "The only element of the rule is time." *Id.* The rule of repose is a matter of public policy, based on the principle that the peace and security of society

depends on there eventually being an end of litigation. At some point, we need finality and certainty. *See Id.*

This case is a perfect example of why these rules exist. Even if the old election list could be obtained from some source, it would be impossible to determine at this point whether each and every name listed was really a "qualified elector" or rightfully subject to challenge on some grounds. Further, even if this task were not impossible, Plaintiff's request is contrary to the public policy embodied by the rule of repose. For almost thirty years, people have relied on the fact that Ono Island falls under the Commission's planning and zoning jurisdiction to make important decisions about their lives, property, and businesses. And now, a single Plaintiff – who just obtained its property in 2019 – is attempting to pull the rug out from under everybody else, just because he can't be bothered to follow the very rules that have helped make the Island a desirable destination. Such a drastic result is due to be disallowed.

## II. PLAINTIFF'S ARGUMENT THAT ITS PROPERTY IS NOT PART OF PLANNING DISTRICT 24, ONO ISLAND, IS WITHOUT MERIT.

In the alternative, Plaintiff argues that its property cannot properly be considered to be a part of District 24, known as "Ono Island," because it is an "intertidal mound" that is technically separated from the island by manmade canals. (PageID.2) Plaintiff has not, however, argued that its property is part of any other planning district. Such an argument would be specious considering the definitions

of the other Planning Districts; moreover, since most of the planning districts have elected to be subject to County zoning, it would also be fruitless. Plaintiff's theory instead seems to be that the property at issue stands alone outside of any planning district whatsoever. Not only is this theory of dubious geological merit, it is also legally impossible.

Section 6 of the 1991 Act provided that the Baldwin County Commission "shall divide the unincorporated areas of Baldwin County into districts…" Act. 91-719, p. 389, § 6. This mandatory requirement is now codified at Ala. Code § 45-2-261.05. Thus, as a matter of law, there can be no part of Baldwin County that is not part of a planning district (even if the district is not subject to County zoning). Plaintiff's attempt to except itself from this rule is due to be denied, and its claims based on this theory are due to be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III. PLAINTIFF'S INVERSE CONDEMNATION CLAIM IS DUE TO BE DISMISSED WITH PREJUDICE.

Plaintiff's inverse condemnation claim under Alabama law is due to be dismissed because it is well-established that such a claim must be based on a <u>physical</u> taking; regulatory takings claims are not cognizable under an inverse condemnation theory pursuant to Alabama law. *Town of Gurley v. M&N Materials, Inc.*, 143 So.3d 1, 12-13 (Ala. 2012); *Housing Authority of Birmingham Dist. v. Logan Properties, Inc.*, 127 So.3d 1169 (2012); *Willis v. University of North Alabama*, 826 So.2d 118,

121 (Ala. 2002). In the alternative, if such a claim did exist under Alabama law, it would due to be dismissed with prejudice for the same reasons applicable to Plaintiff's Fifth Amendment Takings Claim, as discussed in Part III of this Brief.

IV. **PLAINTIFF'S TAKINGS CLAIM IS DUE TO BE DISMISSED WITH PREJUDICE.**

To the extent that Plaintiff's Fifth Amendment takings claim is based on the contention he is owed compensation for an alleged temporary taking because the property has been misidentified as zoned, *see, e.g.*, *First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.*, 482 U.S. 304 (1987), it must fail along with the State law claims seeking to invalidate the application of the Commission's zoning jurisdiction.

This claim is also due to be dismissed with prejudice to the extent that it may be construed as a claim in the alternative, alleging that Plaintiff is entitled to compensation for a regulatory taking merely because its property falls under the planning and zoning jurisdiction of the Baldwin County Commission. Such a claim is not viable as a matter of law, as follows:

> [The United States Supreme Court has] made it quite clear that the mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking. The reasons are obvious. A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself "take" the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired. Moreover, even if the permit is denied, there may be other viable uses available to the owner. Only when a permit is denied and the effect of

14

> the denial is to prevent 'economically viable use of the land in question can it be said that a taking has occurred.

*U.S. v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127 (1985) (internal citations omitted); *see also Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002) (holding that delays associated with the regulatory process such as the temporary development moratoria at issue in the case do not necessarily constitute a temporary taking, absent extraordinary circumstances); *Central Bank & Trust Co. v. City of Miami Beach, Fla.*, 392 F.2d 549 (5th Cir. 1968) (holding that zoning ordinance requiring off-street parking was not a 'taking' of the plaintiff's land, but simply the exercise of the police power not entailing the obligation of just compensation). Plaintiff cannot bring a takings claim just because the zoning ordinance exists, or because the ordinance requires it to obtain a land use certificate prior to a building permit. Its Fifth Amendment claim is accordingly due to be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons stated in the Baldwin County Commission's Motion to Dismiss and this Brief, Plaintiff's Complaint is due to be dismissed with prejudice.

Respectfully submitted this the 3rd day of March, 2021.

                                     **s/Jamie Helen Kidd Frawley**
                                     KENDRICK E. WEBB (ASB-1143-E59K)
                                     JAMIE HELEN KIDD FRAWLEY (ASB-7661-M76H)
                                     Attorneys for Defendant
                                     WEBB MCNEILL WALKER PC
                                     Post Office Box 240909
                                     Montgomery, Alabama 36124
                                     (334) 262-1850 – T
                                     (334) 262-1889 – F
                                     kwebb@wmwfirm.com
                                     jfrawley@wmwfirm.com

OF COUNSEL:

J. Bradford Boyd Hicks
STONE CROSBY, P.C.
8820 Highway 90
Daphne, AL 36526
(251) 210-1057 – T
(251) 626-2617 – F
bhicks@stonecrosby.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 3rd day of March, 2021, I electronically filed the foregoing Brief with the Clerk of the Court using the CM/ECF Electronic Filing System which will send notification of such filing to the following:

Thomas H. Benton, Jr.
Benton Law, LLC
5 Dauphin Street, Suite 301
Mobile, AL  36602
T (251) 338-4286
F (2510694-1998
tom@benton-law.com

                                         **/s/Jamie Helen Kidd Frawley**
                                         OF COUNSEL